IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JOHN SPATES,     )
    Plaintiff,     )
                        )
v.     )        Civil No. 3:18-cv-1305
                        )        Judge Richardson/Frensley
DARREN DOUGLAS,     )
    Defendant.     )

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION AND BACKGROUND

This matter is now before the Court upon Defendant Darren Douglas' Motion for Summary Judgment Docket No. 44. The Defendant argues that the Plaintiff failed to exhaust administrative remedies because he formally withdrew his grievance and that the small burst of pepper spray administered by the Defendant does not rise to level of excessive force to support a claim under 42 U. S. C. §1983. *Id.* The Defendant has filed a Supporting Memorandum of Law. Docket No. 45. Defendant has also filed a Statement of Undisputed Material Facts (Docket No. 46), Declaration of Darren Douglas (Docket No. 47) and Declaration of Elizabeth Lopez with attached documents (Docket No. 48).

The Plaintiff has filed a Response in Opposition to the Motion for Summary Judgment (Docket No. 51) and a letter entitled "Improper and Incomplete Documentations (sic) Filed and Forwarded Case" (Docket No. 52). The Defendant has filed a Reply. Docket No. 50.

For the reasons set forth herein, the undersigned recommends that the Defendant's Motion for Summary Judgment be GRANTED and DISMISSED with PREJUDICE.

## II. UNDISPUTED FACTS[1]

The Complaint alleges that the Plaintiff suffers from diabetes. On May 17, 2018, the Plaintiff alleges he was having a medical episode related to his diabetic condition during dinner and was being escorted for medical care by his inmate helper. Docket No. 11, pp. 1-2. A group of inmates rushed into the yard. Docket No. 46, ¶ 1. After most inmates had returned to their unit, the Plaintiff was stopped by Defendant Douglas and refused to return to his unit. The Defendant gave Plaintiff several directives to place his hands on the fence and after his initial refusal of the directives another correctional officer arrived who gave further directives to the Plaintiff. *Id.* at ¶ 2. The Defendant and the other correctional officer gave Plaintiff multiple clear warnings that if he continued to disobey, they would use pepper spray. *Id.* at ¶ 3. After Plaintiff's continual refusal to comply with the directives, Defendant Douglas administered one burst of OC pepper spray to the Plaintiff. *Id.* at ¶ 4. There is no further use of force allegations against Defendant Douglas.

The Plaintiff filed a grievance which he later withdrew. *Id.* at ¶ 6.

### A. Declaration of Darren Douglas

On May 17, 2018, Defendant Douglas was an employee of Core Civic serving as a shift supervisor and the Trousdale Turner Correctional Center ("TTCC"). Docket No. 47, ¶ 2. On that evening, a group of inmates rushed through a door to get to the yard even though they were not assigned to be on the yard at that particular time. *Id.* at ¶3. Douglas cleared the yard except for the Plaintiff who refused to comply with his instructions. *Id.* at ¶¶ 3-4. The Plaintiff verbally threatened and aggressively swung a metal cane toward Douglas and advised him that if he did not move, he would suffer physical harm. *Id.* at ¶5.

---

[1] Unless otherwise noted, the following facts are in a form required by Federal Rules of Civil Procedure 56 and are undisputed.

The Plaintiff did not show any physical symptoms of a medical problem such as confusion, heavy sweating, or incoherent speech. *Id.* at ¶ 6. Plaintiff was directed to place his hands on the fence multiple times but refused and continued to threaten and argue with the Defendant. *Id.* at ¶ 7. Another officer arrived to assist, and Plaintiff was physically moved to the fence with continued instructions to place his hands on the fence. *Id.* at ¶ 8. Plaintiff refused to comply pushing back and attempting to turn around to face the Defendant and other officer. *Id.* at ¶¶ 8-9. In addition to repeatedly ordering Plaintiff to the ground, Plaintiff was warned multiple times that he would be sprayed with pepper spray if he did not comply. *Id.* at ¶ 10. Defendant administered one small burst of OC pepper spray on the left side of Plaintiff's face and after he still did not comply; and the other officer administered a burst of OC pepper spray to the right side of Plaintiff's face. *Id.* at ¶¶ 11-12. Despite his continuing resistance, Plaintiff was taken to the ground using "balance-displacement techniques and pressure-point tactics," and after additional officers arrived, placed in hand restraints. *Id.* at ¶¶ 13-14. After being placed in the restraints and prior to the arrival of medical personnel, Plaintiff appeared to have a seizure at which point emergency services response was activated and medical personnel promptly responded and provided medical treatment to Plaintiff. *Id.* at ¶¶ 14-15.

Defendant Douglas did not intend to cause harm in administering the pepper spray and used only that necessary to achieve compliance and restore order. *Id.* at ¶¶ 16, 18. Douglas did not maliciously or sadistically cause harm to the Plaintiff. *Id.* at ¶ 17.

    **B.**    **Declaration of Elizabeth Lopez**

Elizabeth Lopez is the grievance coordinator at TTCC. Docket No. 48, ¶ 2. Core Civic has an administrative grievance system for inmates at TTCC to seek redress for issues related to the conditions of their confinement. *Id.* at ¶3.

The grievance process at TTCC proceeds as follows:

<u>First Level</u>: An inmate must file a grievance using CR-1394 within seven calendar days of the occurrence or the most-recent occurrence giving rise to the grievance. The chairperson will review the grievance and log the grievance as received. The chairperson's response to the grievance will be written on CR-1394 following the chairperson's receipt and review of the supervisor's response. The chairperson and supervisor have seven working days to complete the response, which begins on the day that the grievance begins to be processed. If the inmate accepts the response, it will be documented on CR-3148.

<u>Second Level</u>: Within five calendar days of being notified of the Level One response, the inmate may appeal the response to the grievance committee and the warden. A hearing will take place within five working days of the appeal's filing. Within five working days of the hearing, the grievance committee's proposed response will be documented on CR-1393 and will be forwarded to the warden. Within seven working days of receipt, the warden will forward his or her decision to the chairperson. Within five working days of receiving the warden's response, the chairperson will allow the inmate to review the grievance materials and response. If the inmate accepts the response, the chairperson will enter the approval on the grievance.

<u>Third Level</u>: An inmate may appeal the Level Two response within five calendar days of receipt of the response. The chairperson will forward one copy of the grievance and all documentation to the deputy commissioner of operations or his or her designee. The Level Three response will be sent to the chairperson for distribution within twenty-five working days of the date the appeal was received. The chairperson will enter the final decision on the grievance. This response is final and is not subject to appeal.

*Id.* at ¶ 4, 48-1.

The Plaintiff filed a grievance dated May 19, 2018, where he complained of excessive force from Defendant Douglas as well as his bunk assignment. *Id.* at ¶ 5, 48-2. The grievance clerk noted that the grievance was received on June 13, 2018 and a response was issued by the supervisor on July 17, 2018. *Id.* at ¶¶ 6-7, 48-3. The Plaintiff withdrew his grievance on July 24, 2018. *Id.* at ¶ 8, 48-4.

### III. LAW AND ANALYSIS

**A.  Rule 7.01(b) and 56.01(c)(g)**

Local Rule 7.01(b) states, in pertinent part:

> **b. Response.** Each party opposing a motion shall serve and file a response, memorandum, affidavits, and other responsive material not later than fourteen (14) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty-one (21) days after the service of the motion, unless otherwise ordered by the Court. Failure to file a timely response shall indicate that there is no opposition to the motion.

Additionally, with respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

> **c. Response to Statement of Facts.** Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (i) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed. *Each disputed fact must be supported by specific citation to the record.*
>
> . . .
>
> **g. Failure to Respond.** Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment.

Plaintiff has failed to properly respond to the Statements of Material Facts filed in this matter. Pursuant to Local Rule 56.01(g), Plaintiff's failure to properly respond indicates "that the asserted facts are not disputed for the purposes of summary judgment." Accordingly, there are no genuine issues as to any material fact and all that remains to be determined is whether Defendant is entitled to a judgment as a matter of law.

### B. Motion for Summary Judgment

It would be inappropriate to grant Defendants' Motions solely on the ground that Plaintiff has failed to properly respond. *See Stough v. Mayville Community Schools*, 138 F. 3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the

> movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ... The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted).

The Court will, therefore, consider whether all Defendants have met their burden under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F. 2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case,

6

and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

Additionally, Fed. R. Civ. P. 56(c)(1) sets forth the requirement to support factual assertions as follows:

> **(c) Procedures.**
>
> **(1)** *Supporting Factual Positions***.** A party asserting that a fact cannot be or is genuinely disputed must support that assertion by:
>
>> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

### C.     42 U.S.C. §1983

Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under §1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988), *citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978). The traditional definition of acting under color of state law requires that the defendant in a §1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255, *quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

**1.     Generally**

Plaintiff alleges violations of his First and Eighth Amendment rights pursuant to 42 U.S.C. § 1983. Docket No. 1. Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988), *citing Parratt v. Taylor,* 451 U.S. 527, 535 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155 (1978). The traditional definition of acting under color of state law requires that the

defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255, *quoting United States v. Classic,* 313 U.S. 299, 326 (1941).

### 2. Eighth Amendment

The Eighth Amendment provides that:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The United States Supreme Court has held that the constitutional prohibition of "cruel and unusual punishments" forbids punishments that are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (citations omitted).

In order to establish an Eighth Amendment claim, an inmate must satisfy a two-prong test: (1) the deprivation alleged must be objectively serious; and (2) the official responsible for the deprivation must have exhibited deliberate indifference to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

### 3. Excessive Force

An inmate's post-conviction excessive force claim is raised "exclusively under the Eighth Amendment's cruel and unusual punishment clause." *Combs v. Wilkinson*, 315 F. 3d 548, 556 (6th Cir. 2002), *citing Pelfrey v. Chambers*, 43 F. 3d 1034, 1036–37 (6th Cir. 1995). While the Eighth Amendment's prohibition against cruel and unusual punishment prohibits the wanton and unnecessary infliction of pain upon prisoners, the mere fact that a prisoner was subjected to physical contact which may have been forceful does not, by itself, show an Eighth Amendment violation. *Parrish v. Johnson,* 800 F. 2d 600, 604-05 (6th Cir. 1986). Where a prison security

9

measure is involved, the Supreme Court has said that "whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S. Ct. 1078, 1085, 89 L. Ed. 2d 251 (1986) (citations omitted). *See also Cordell v. McKinney*, 759 F. 3d 573, 580 (6th Cir. 2014). The Sixth Circuit has clarified that "the good faith use of physical force in pursuit of valid penological or institutional goals will rarely, if ever, violate the Eighth Amendment." *Parrish,* 800 F. 2d at 604, *citing Whitley*, 475 U.S. at 319, 106 S. Ct. at 1084, 89 L. Ed. 2d at 251; *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S. Ct. 2392, 2398, 69 L. Ed. 2d 59 (1981).

        D.        **Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e**

A prisoner must exhaust all available administrative remedies before filing a claim under §1983 or any other federal law. 42 U.S.C. §1997e(a). *See also, e.g., White v. McGinnis*, 131 F. 3d 593, 595 (6th Cir. 1997); *Brown v. Toombs*, 139 F. 3d 1102, 1104 (6th Cir. 1998); *Wyatt v. Leonard*, 193 F. 3d 876, 878 (6th Cir. 1999). The Prison Litigation Reform Act of 1995 provides in pertinent part as follows:

> (a) **Applicability of Administrative Remedies**. No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (emphasis original).

Additionally, the filing of an initial grievance is not sufficient to satisfy the requirements of §1997e(a). Rather, the PLRA exhaustion of prison administrative remedies requires a prisoner to pursue his prison grievance through the final level of administrative appeal. *Hartsfield v. Vidor*, 199 F. 3d 305, 306 (6th Cir. 1999). In *Hartsfield*, the Sixth Circuit explicitly stated:

> Even if Plaintiff did file an initial grievance against [defendants], he was required to continue to the next step in the grievance process . .

10

> . . We have previously held that an inmate cannot simply . . . abandon the process before the completion and claim that he has exhausted his remedies. . .

When a defendant shows that a plaintiff has not "exhausted all available state administrative remedies," the only remaining question is whether Plaintiff's claims have been brought with respect to "prison conditions" as that term is used in 42 U.S.C. §1997e(a).

The Sixth Circuit discussed the meaning of the term "prison conditions" as used in 42 U.S.C. § 1997e(a) in *Freeman v. Francis*, 196 F. 3d 641 (6th Cir. 1999). In *Freeman*, Plaintiff inmate brought a lawsuit against prison officials claiming that they had used excessive force against him. The lower court had dismissed his complaint for failure to exhaust administrative remedies. On appeal, Plaintiff argued in part that he was not required to exhaust his administrative remedies because his excessive force claim did not involve a "prison condition" within the meaning of §1997e(a). The *Freeman* Court stated in part as follows:

> The phrase "action . . . with respect to prison conditions" is not defined in §1997e. Because the question is one of statutory construction, we must first look to the plain language of the statute. Defendants argue that the term "prison conditions" as used in 18 U.S.C. ' 3626(g)(2), which was amended as part of the same legislation as § 1997e, does include claims such as excessive force because it expressly includes "effects of actions of government officials on the lives of confined persons" as well as "conditions of confinement" in defining "prison conditions." . . . It is generally recognized that when Congress uses the same language in two different places in the same statute, the words are usually read to mean the same thing in both places.
>
> . . .
>
> Moreover, reading the term "prison conditions" to include claims of excessive force finds support in the purpose and legislative history of the Act. The Act was passed to reduce frivolous prisoner lawsuits and to reduce the intervention of federal courts into the management of the nation's prison systems. A broad exhaustion requirement that includes excessive force claims effectuates this purpose and maximizes the benefits of requiring prisoners to use prison grievance procedures before coming to federal court. Prisons need to know about and address claims of excessive force as they would any other claim concerning prison life so that steps may be taken to stop problems immediately if they exist.

196 F. 3d at 643-644 (footnote omitted).

The U. S. Supreme Court has also held that "§1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." *See Porter v. Nussle*, 534 U.S. 516, 520, 122 S. Ct. 983, 986 (2002). As the *Porter* Court stated:

> Beyond doubt, Congress enacted §1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. . . . In other instances, the internal review might "filter out some frivolous claims." . . . And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.
>
> . . .
>
> For the reasons stated, we hold that the PLRAs exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.

122 S. Ct. at 988, 992 (citations omitted, emphasis added).

### E.  The Case at Bar

#### 1.  Exhaustion

As an initial matter, under the reasoning of *Porter* and *Freeman*, Plaintiff's claims in the case at bar fall within the meaning of the term "prison conditions" as used in §1997e(a). He is, therefore, required to exhaust his administrative remedies as set forth in the PLRA.

It is undisputed that Core Civic maintains an administrative grievance system at TTCC to allow inmates to seek redress related to the conditions of their confinement. Docket No. 48, ¶ 3, 48-1. According to the Defendant's records, a grievance dated May 15, 2018, was received by grievance personnel on June 13, 2018. Docket No. 48, ¶¶ 5-6. A response to the grievance was issued on July 17, 2018. Docket No. 48, ¶¶ 6-7, 48-3. Then, on July 24, 2018 the Plaintiff formally withdrew his grievance by filing a signed withdrawal of grievance form. Docket No. 48, ¶ 8, 48-

12

4.

The Defendant argues that the Plaintiff did not properly exhaust his administrative remedies under the PLRA because he withdrew his grievance from the remedy process prior to its conclusion. Docket No. 45, p. 6. As such, the Defendant contends that summary judgment should enter on this claim against the Defendant. *Id.*

In response, the Plaintiff contends that the grievance identified by the Defendant was not in fact one filed by the Plaintiff. Docket No. 52. Plaintiff contends that on July 24, 2018 he advised the grievance chairperson that the grievance in question was not his as evidenced by the handwriting and signature and therefore requested that the grievance not be heard. *Id.* Plaintiff advises that he did file a grievance "but the prison did not and has not released the true grievance filed by the Plaintiff." *Id.* Plaintiff further contends that grievances were filed by other witnesses as well. Docket No. 51. In reply, Defendant argues that the Plaintiff's mere allegation that he did file a grievance is insufficient to satisfy this burden. Docket No. 50, p. 4.

Full and proper exhaustion under the PLRA requires compliance with the applicable terms of the grievance procedure that is at issue. *Jones v. Bock*, 549 U. S. 199, 218-219 (2007). When a grievance procedure includes a mechanism for the inmate to continue to pursue the grievance even if he has not received a response, the inmate cannot abandon the process prior to its completion merely because of the lack of a response. *Perkins v. Nashville Sheriff's Dept.*, 2015 WL 4752620 (M. D. Tenn. August 10, 2015)(inmate failed to comply with PLRA when inmate abandon any attempt to follow up on his grievance or to appeal after not receiving a timely response.).

Here, the Plaintiff asserts that he filed a "true grievance" but there is no evidence of such. Further, there is no dispute that the grievance attributed to the Plaintiff addressed the issues raised in this litigation. Docket No. 48-2. Most importantly, it is undisputed that the Plaintiff withdrew

13

the grievance and never took any action to advance any grievance regarding this matter. Accordingly, the undisputed evidence in this case establishes that the Plaintiff abandoned the grievance process prior to its completion. Thus, summary judgment should be GRANTED to the Defendant on this claim because Plaintiff failed to properly exhaust it prior to filing this lawsuit.

### 2. Excessive Force

Defendant Douglas argues that even if the matter is properly before the Court, his conduct of utilizing a single burst of pepper spray following Plaintiff's continued disobedience of his orders "do not establish 'unnecessary and wanton infliction of pain,' and, therefore do not establish that Douglas used excessive force against Spates." Docket No. 45, p. 9, citation omitted.

In response, Plaintiff contends that the Defendant's statement "only provided one half percent of the actual incident." Docket No. 52, p. 2. He argues that he was sprayed and choked by the hands of Defendant Douglas and others. *Id.*

The use of pepper spray on an individual is not per se excessive force. The purpose of pepper spray is to give an officer an effective nonlethal option to take custody of an individual. Based on the record presented, there are no disputed material facts and Defendant is entitled to Summary Judgment on Plaintiff's Eighth Amendment excessive force claim as a matter of law. The record established Defendant Douglas applied a measured amount of force to discipline Plaintiff and restore order. There is no dispute that Plaintiff disobeyed the direct orders given to him by Defendant Douglas and others. The Plaintiff does not contest that he failed to comply with the instructions given him. Rather, he asserts that because of his hypoglycemic condition he was "totally incoherent" and confused. Docket No. 11, p. 2. The Plaintiff was acting in an aggressive and disrespectful manner toward the Defendant. Using measured force to take the Plaintiff to the ground and hand cuff him was a reasonable response to his failure to comply with direct orders

and continued aggressive and disrespectful conduct.

The Plaintiff has not introduced any evidence to refute the declaration of the Defendant that the use of force was reasonable. Plaintiff offers only speculative and unsupported assertions to cast doubt. The Plaintiff has not introduced any competent evidence to show that the use of force by Defendant Douglas was unjustified.

Plaintiff has also not submitted any evidence to satisfy the objective component of this Eighth Amendment claim. "[N]ot every shove or restraint givens rise to a constitutional violation." *Cordell v. McKinney*, 759 F. 3d 573, 580 (6th Cir. 2014). The undisputed facts establish that Plaintiff was given multiple clear warnings that if he continued to disobey, pepper spray would be used and after his continued disobedience Douglas administered one burst of pepper spray. Docket No. 46, p. 2. Plaintiff has not introduced affidavits or other evidence that refutes Defendant's evidence and creates a genuine dispute as to material fact. The unrefuted evidence that Defendant Douglas applied force in a good faith effort to restore discipline rather than maliciously cause pain. *Jennings v. Mitchell*, 93 Fed. Appx. 723, 725 (6th Cir. 2004). The Defendant's measured use of force in the face of Plaintiff's refusal to follow direct orders by disruptive and disrespectful behavior, and his resistance to efforts to remove him from the yard did not violate Plaintiff's Eighth Amendment rights. Defendant Douglas is entitled to summary judgment on Eighth Amendment claim premised on the unreasonable use of force and his motion should be **GRANTED**.

### IV. CONCLUSION

For the reasons set forth above, the undersigned finds that the Plaintiff withdrew his grievance and therefore has failed to exhaust his administrative remedies and in any event, there are no genuine issues of material in dispute and the Defendant is entitled to judgment as a matter of law. The undersigned therefore recommends that the Defendant's Motion for Summary

Judgment (Docket No. 44) be GRANTED and that this action be DISMISSED with PREJUDICE.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

                                              **JEFFERY S. FRENSLEY**
                                              **U. S. District Magistrate Judge**